UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CASE NO.: ------

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

     Plaintiff,

vs.

LYNX CONSTRUCTION MANAGEMENT, LLC,
LYNX CONSTRUCTION SERVICES, LLC,
LYNX ENGINEERING, LLC,
LYNX ENGINEERING CONSULTING, LLC,
LYNX BUSINESS SOLUTIONS, LLC,
EMERALD GROUP INVESTMENTS, LLC,
C.M. MORAN & ASSOCIATES, INC.,
SHOMAR PROPERTY MANAGEMENT, LLC,
WASIM SHOMAR, INC., CHRISTOPHER MORAN, INC.,
45 ALMERIA, LLC, WASIM J. SHOMAR,
VIRGINIA SHOMAR, CHRISTOPHER M. MORAN, and
SHARI A. LEE,

     Defendants,

_____/

## **COMPLAINT**

Plaintiff, PHILADELPHIA INDEMNITY INSURANCE COMPANY ("PIIC"), sues Defendants, LYNX CONSTRUCTION MANAGEMENT, LLC (the "Principal"), LYNX CONSTRUCTION SERVICES, LLC, LYNX ENGINEERING, LLC, LYNX ENGINEERING CONSULTING, LLC,  LYNX BUSINESS SOLUTIONS, LLC, EMERALD GROUP INVESTMENTS, LLC, C.M. MORAN & ASSOCIATES, INC., SHOMAR PROPERTY MANAGEMENT, LLC, WASIM SHOMAR, INC., CHRISTOPHER MORAN, INC., 45 ALMERIA, LLC, WASIM J. SHOMAR,  VIRGINIA SHOMAR, CHRISTOPHER M. MORAN, and SHARI A. LEE on the following grounds:

**NATURE OF THE ACTION**

1.      This is an action seeking a preliminary injunction and damages arising out of Defendants' failure to indemnify, exonerate, reimburse and provide collateral to PIIC pursuant to the terms of a written General Indemnity Agreement.  Losses and expenses have been and are still being incurred by PIIC as a result of having issued payment and performance bond claims for the benefit of the Principal and the other Defendants.

**JURISDICTION**

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1), as this lawsuit is between citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) ("a judicial strict in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated").  At all times material hereto, Principal was conducting business activities in Broward County, Florida. Two of the three sets of payment and performance bonds subject of this action were for a construction project located in Broward County, Florida, and were issued for the benefit of obligees that owns the real property in Broward County, Florida.  The General Indemnity Agreement in question was breached in Broward County, Florida.    Consequently, venue is appropriate in the Southern District of Florida, Ft. Lauderdale division.

**JURISDICTION**

4.      PIIC is a Pennsylvania corporation with its principal place of business in Bala Cynwyd, Pennsylvania.

5.       LYNX CONSTRUCTION MANAGEMENT, LLC (the "Principal") is a Florida limited liability company with its principal place of business in Miami Dade County, Florida. Wasim J. Shomar is the managing member of LYNX CONSTRUCTION MANAGEMENT, LLC. Christopher M. Moran is an officer of LYNX CONSTRUCTION MANAGEMENT, LLC.

6.       LYNX CONSTRUCTION SERVICES, LLC is a Florida limited liability company with its principal place of business in Miami Dade County, Florida. Wasim J. Shomar is the managing member of LYNX CONSTRUCTION SERVICES, LLC. Christopher M. Moran is an officer of LYNX CONSTRUCTION SERVICES, LLC.

7.        LYNX ENGINEERING, LLC is a Florida limited liability company with its principal place of business in Miami Dade County, Florida. Wasim J. Shomar is the managing member of LYNX ENGINEERING, LLC. Christopher M. Moran is an officer of LYNX ENGINEERING, LLC.

8.       LYNX ENGINEERING CONSULTING, LLC is a Florida limited liability company with its principal place of business in Miami Dade County, Florida. Wasim J. Shomar is the managing member of LYNX ENGINEERING CONSULTING, LLC. Christopher M. Moran is an officer of LYNX ENGINEERING CONSULTING, LLC.

9.        LYNX BUSINESS SOLUTIONS, LLC is a Florida limited liability company with its principal place of business in Miami Dade County, Florida. Wasim J. Shomar is the managing member of LYNX BUSINESS SOLUTIONS, LLC.

10.      EMERALD GROUP INVESTMENTS, LLC is a Florida limited liability company with its principal place of business in Miami Dade County, Florida. Christopher M. Moran is the managing member of EMERALD GROUP INVESTMENTS, LLC.

11.     C.M. MORAN & ASSOCIATES, INC. is a Florida corporation with its principal place of business in Miami Dade County, Florida. Christopher M. Moran and Shari Lee are officers of C.M. MORAN & ASSOCIATES, INC.

12.     SHOMAR PROPERTY MANAGEMENT, LLC is a Florida limited liability company with its principal place of business in Miami Dade County, Florida. Wasim J. Shomar is the managing member of SHOMAR PROPERTY MANAGEMENT.

13.     WASIM SHOMAR, INC. is a Florida corporation with its principal place of business in Miami Dade County, Florida. Wasim J. Shomar is an officer of WASIM SHOMAR, INC.

14.     CHRISTOPHER MORAN, INC. is a Florida corporation with its principal place of business in Miami Dade County, Florida.  Christopher M. Moran is an officer of CHRISTOPHER MORAN, INC.

15.     45 ALMERIA, LLC is a Florida limited liability company with its principal place of business in Miami Dade County, Florida. Wasim J. Shomar is the managing member of 45 ALMERIA, LLC.

16.     WASIM J. SHOMAR is a Florida resident and citizen of Miami Dade County, Florida.

17.     VIRGINIA SHOMAR is a Florida resident and citizen of Miami Dade County, Florida.

18.     CHRISTOPHER M. MORAN is a Florida resident and citizen of Miami Dade County, Florida.

19.     SHARI A. LEE is a Florida resident and citizen of Miami Dade County, Florida.

## GENERAL ALLEGATIONS

### A. The Projects and Bonds

20.      On or about December 26, 2018, Principal, as general contractor, entered into a contract (the "HIE Contract") with ANR Hotels, Inc. ("ANR") for the construction of a project commonly known as Holiday Inn Express, 117 Units, 5 Story Hotel Building Miramar, Tract 1 Parcel B Trammel Crowe Industrial Center Plat BK 166, PG-18, Public Records of Broward County, FL Property Identification Number: 514022-04-0021 (the "HIE Project"). A true and correct copy of the HIE Contract is attached hereto as **Exhibit "A."**

21.      As required by law or under the terms of the HIE Contract, on or about December 27, 2018, Principal and PIIC made, executed and delivered to ANR performance bond number PB12270900085 (the "HIE Performance Bond") and payment bond number PB12270900085 (the "HIE Payment Bond") (collectively the "HIE Bonds") on behalf of Principal, as principal, and in favor of ANR, as obligee.  True and correct copies of the HIE Bonds are attached hereto as **Exhibit "B."**

22.      On or about May 17, 2019, Principal, as general contractor, entered into a contract (the "PSW Contract") with the Seminole Tribe of Florida (the "Tribe") for the construction of a project commonly known as HW Priscilla Sayen Way Apartments, Project No. 3800849903, Located at 6351 Priscilla Sayen Way, Hollywood, FL 33024 (the "PSW Project"). A true and correct copy of the PSW Contract is attached hereto as **Exhibit "C."**

23.      As required by law or under the terms of the PSW Contract, on or about May 31, 2019, Principal and PIIC made, executed and delivered to the Tribe performance bond number PB12270900121 (the "PSW Performance Bond") and payment bond number PB12270900121 (the "PSW Payment Bond") (collectively the "PSW Bonds") on behalf of Principal, as principal, and

in favor of the Tribe, as obligee.  True and correct copies of the PSW Bonds are attached hereto as **Exhibit "D."**

24.     On or about September 18, 2019, Principal, as general contractor, entered into a contract (the "Empowerment Center Contract")[1] with Miami-Dade County ("Miami-Dade")[2] for the construction of a project commonly known as Construction of the New Empowerment Center ISD Contract No. W130069-C (the "Empowerment Center Project")[3]. A true and correct copy of the Empowerment Center Contract is attached hereto as **Exhibit "E."**

**25.**     As required by law or under the terms of the Empowerment Center Contract, on or about October 18, 2019, Principal and PIIC made, executed and delivered to Miami-Dade performance bond number PB12270900199 (the "Empowerment Center Performance Bond") and payment bond number PB12270900199 (the "Empowerment Center Payment Bond") (collectively the "Empowerment Center Bonds")[4] on behalf of Principal, as principal, and in favor of Miami-Dade, as obligee.  True and correct copies of the Empowerment Center Bonds are attached hereto as **Exhibit "F."**

### B.  The General Indemnity Agreement

26.     On June 25, 2018, the Defendants, as Indemnitors, executed a General Indemnity Agreement ("Indemnity Agreement") for the benefit of PIIC, for the purpose of collateralizing, exonerating, and indemnifying PIIC for any Bonds issued pursuant to the Indemnity Agreement. A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit "G."**

---

[1] The HIE Contract, PSW Contract, and the Empowerment Center Contract are at times herein collectively referred to as the "Contracts" or the "Bonded Contracts".
[2] ANR, the Tribe and Miami-Dade are at times herein collectively referred to as the "Obligees".
[3] The HIE Project, PSW Project, and the Empowerment Center Project are at times herein collectively referred to as the "Projects".
[4] The HIE Bonds, PSW Bonds, and Empowerment Center Bonds are at times herein collective referred to as the "Bonds".

27.     Pursuant to paragraph 3 of the Indemnity Agreement, the Defendants for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, agreed to the following:

> Principals and Indemnitors agree to indemnify and hold harmless Surety from and against any Liabilities & Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (b) by failure of Principals or Indemnitors to perform or comply with any of the covenants or conditions of this Agreement or any other agreement; and (c) in enforcing any of the covenants or conditions of this Agreement or any other agreement. The Principals' and Indemnitors' obligation to indemnify the Surety shall also apply to any Bond renewals, continuations or substitutes therefor and shall extend to any payments made by Surety under the Good Faith belief that (a) Surety was or might be liable therefor or (b) the payments were necessary or advisable to protect any of Surety's rights or to avoid or lessen Surety's liability or alleged liability. **In the event of payments by Surety, Principal and Indemnitors agree to accept vouchers, a sworn itemization, or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Principals and Indemnitors to Surety in any demand, claim or suit by Surety against Principals and Indemnitors**. Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety. The Surety may, but shall not be obligated to, join any or all of the Principals or Indemnitors as parties to any action relating to any Bonds or this Agreement, and Surety shall have no obligation to exhaust any remedies against any person or entity prior to pursuing any such action against one or more Principals or Indemnitors.

28.     Pursuant to paragraph 4 of the Indemnity Agreement, the Defendants for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, agreed to the following:

> Principals and Indemnitors agree to deposit collateral immediately upon demand by any Surety an amount equaling any and/or all of the following (a) the face amount of any claim or demand that is asserted against Surety under any Bond(s) plus Surety's estimate of the costs and expenses Surety may sustain and incur while paying, compromising, resisting, defending, trying or appealing the claim or demand (in Surety's sole discretion); (b) sums posted by Surety as a reserve for the payment of potential losses and/or expenses; (c) all costs and expenses incurred in connection with investigating, paying, or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses; (d) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for the Principal or Indemnitors; € funds loaned or advanced by Surety (at Surety's sole discretion) to the Principal; and (f) all other amounts payable to Surety according to the terms and conditions

of this Agreement or any other agreement between Surety and Principals or Indemnitors. Surety may, in its sole discretion, either retain or use any part or all of the collateral in settlement or payment of any claim made under any Bond(s), as collateral or reimbursement for any actual Liability & Loss already incurred, as reserve to cover the amount of any potential Liability & Loss, or for any other purpose related to any Liability & Loss for which the Indemnitors would be required to collateralize, exonerate, or indemnify Surety under the terms of this Agreement. **The Principals and Indemnitors shall be obligated to deposit the amount of collateral demanded by Surety regardless of whether they dispute their liability for any Liability & Loss or potential Liability & Loss or assert any defenses to the validity or enforcement of this Agreement**. In the event that Surety demands collateral from more than one Principal or Indemnitor, Surety shall be entitled, in its sole discretion, to apportion the amount of collateral required to be deposited by each Principal or Indemnitor. If Surety permits the Principals and Indemnitors to deposit less than the full amount of either (a) through (f) herein, Surety may, from time to time, require the Principals and Indemnitors to increase the amount of the collateral by any amount Surety deems appropriate, in its sole discretion, up to an amount equal to (a) through (f) herein. **In the event the Principals and Indemnitors fail to deposit the amount of cash collateral required under this provision, Surety may, in its sole discretion, direct the Principals and Indemnitors to deposit alternate forms of collateral security acceptable to Surety. Principals and Indemnitors acknowledge that their duty to deposit collateral under this Paragraph is specifically enforceable because Surety lacks an adequate remedy at law and their failure to deposit collateral with Surety as required by this Paragraph will cause irreparable harm to as justify injunctive relief compelling the deposit of collateral.** Surety agrees to refund any unused portion of the deposit, without any interest or other damages for loss of use of such funds, upon termination of all liability of Surety on all Bonds and the full performance of the Principals and Indemnitors of all obligations under this Agreement.

29.    Pursuant to paragraph 9 of the Indemnity Agreement, the Defendants for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, agreed to the following:

Surety shall have the exclusive right, in its sole discretion, to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, on the basis of Surety's Good Faith belief that it is or could be liable or because the Surety deems it necessary or expedient to do so, and Surety's decision thereon shall be final and binding upon the Indemnitors. Subject to the Surety's rights set forth in the first sentence of this section, which shall remain in full force and effect, if Principals or Indemnitors desire that the Surety litigate such claim or demand, or defend such suit, or appeal from such judgment, they shall, upon request: (a) provide a reasonable basis or bases for litigating such claim or demand, or defending such suit, or appealing from such judgment; and (b) deposit with the Surety cash or collateral satisfactory to the Surety in kind and amount to

be used in paying any judgment or judgments rendered, or which might be rendered, against the Surety, together with interest, costs and attorneys' fees.

30.     Pursuant to paragraph 11 of the Indemnity Agreement, the Defendants for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, agreed to the following:

> Upon the request of Surety, Principals and Indemnitors will procure the discharge of Surety from any Bond, and all liability arising there from, and provide evidence to Surety regarding same.

31.     Pursuant to paragraph 12 of the Indemnity Agreement, the Defendants for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, agreed to the following:

> Surety, including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of Principals and Indemnitors, including all books and records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principals and Indemnitors agree to provide updated financial statements upon the Surety's request. Principals and Indemnitors hereby authorize those with whom such Bonded Contractors are made to furnish Surety all information concerning such contracts and the work thereunder. Principals and Indemnitors also hereby authorize any bank, financial or lending institution, or depositor to provide Surety with access to any bank statements or financial records or any other information or documents requested by Surety. **Principals and Indemnitors acknowledge that their duty to provide access to books and records under this Paragraph is specifically enforceable because Surety lacks an adequate remedy at law and their failure to provide access with Surety as required by this Paragraph will cause irreparable harm to as to justify injunctive relief compelling such access be provided.**

32.     The Indemnity Agreement is unequivocal and specific in setting forth the Defendants' joint and several obligations to indemnify and keep PIIC indemnified from any Liabilities & Loss sustained or incurred by reason of having executed or being requested to execute any and all Bonds.   Liability & Loss is defined within the Indemnity Agreement as "any and all liability, losses, costs, expenses and fees of whatever kind or nature that Surety may sustain or

incur as a result of executing any Bond, or as a result of the failure of Principals or Indemnitors to perform or comply with this Agreement…"

33.     The Indemnity Agreement is unequivocal and specific in setting forth the Defendants' obligations to collateralize and provide PIIC with collateral security acceptable to PIIC.

34.     The Indemnity Agreement is unequivocal and specific in setting forth PIIC's right to decide and determine whether any claim, liability, suit or judgment made or brought against PIIC on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed.

35.     The Indemnity Agreement is unequivocal and specific in setting forth the Defendants' obligations to procure the discharge of PIIC from any Bonds, and all liability arising therefrom upon request of PIIC.

36.     The Indemnity Agreement is unequivocal and specific in setting forth the Defendants' obligations to provide PIIC access to its books and records.

37.     The obligation to indemnify PIIC is different and separate from the obligation to provide access to books and records and to provide collateral.  The obligation to provide books and records and the obligation to provide collateral arise even before PIIC has incurred any actual loss. These obligations are designed to protect PIIC when a claim or Liability & Loss is first asserted and before the amount owed by PIIC to its Obligee(s) is adjudicated.

### C.  HIE Liability & Loss

38.     ANR issued a declaration of default and notice of contractor termination thereby terminating the HIE Contract on July 7, 2020.  ANR indicated that Principal's continued defaults of the HIE Contract and failure to cure those defaults after repeated notices justified the default and termination.

39.     PIIC has solicited bids from potential replacement/completion contractors to complete the Principal's remaining work under the HIE Contract and that work alleged by ANR to have been defectively performed by the Principal.  It is currently estimated that the cost for completion, inclusive of potential delay damage exposure will exceed $2,100,000.  PIIC currently estimates that the Balance of the HIE Contract Price available to offset completion costs may be as little as $1,500,000.   Accordingly, exclusive of costs, fees and expenses, PIIC currently estimates its exposure under the HIE Performance Bond to be approximately $600,000.

40.     As a result of executing the HIE Payment Bond, PIIC has incurred Losses, exclusive of costs, fees and expenses, of no less than $1,395,524.47, to date.   PIIC's vouchers or other prima facie evidence of the fact and extent of the liability of Defendants for PIIC's payments under the HIE Payment Bond is attached hereto as **Exhibit "H"**.  Additionally, PIIC anticipates that it may sustain or incur additional Loss of no less than $100,000 under the HIE Payment Bond.

41.     PIIC currently holds contract balances associated with the HIE Project in a PIIC managed escrow account in the amount of $87,527.58 which could be applied to offset and/or satisfy incurred Losses and/or exposure to Loss.

42.     Accordingly, PIIC currently estimates its total exposure to Liability & Loss, exclusive of costs, fees and expenses, as a result of executing the HIE Bonds on behalf of Principal to be no less than $2,000,000.

### D.  PSW Liability & Loss

43.     The Tribe issued a declaration of default and notice of termination thereby terminating the PSW Contract on August 4, 2020.  The Tribe indicated that Principal's continued defaults of the PSW Contract and failure to cure those defaults after repeated notices justified the default and termination.

44.     PIIC is currently in the process of soliciting bids from potential replacement/completion contractors to complete the Principal's remaining work under the PSW Contract and that work alleged by the Tribe to have been defectively performed by the Principal. It is currently estimated that the cost for completion will exceed the Balance of the PSW Contract Price of approximately $3,500,000.

45.     As a result of executing the PSW Payment Bond, PIIC has incurred Losses, exclusive of costs, fees and expenses, of no less than $397,815.25, to date.  PIIC's vouchers or other prima facie evidence of the fact and extent of the liability of Defendants for PIIC's payments under the PSW Payment Bond is attached hereto as **Exhibit "I"**.  Additionally, PIIC anticipates that it may sustain or incur additional Losses under the PSW Payment Bond of approximately $100,000.

46.     Accordingly, PIIC currently estimates its total exposure to Liability & Loss, exclusive of costs, fees and expenses, as a result of executing the PSW Bonds on behalf of Principal to be no less than $500,000.

### E.  Empowerment Center Liability & Loss

47.     As of this date, Miami-Dade has not terminated Principal's performance under the Empowerment Center Contract.  However, based upon PIIC's best current estimates we anticipate Principal's completion costs to be approximately $7,100,000. PIIC currently estimates that the Balance of the Empowerment Center Contract Price available to offset completion costs may be no more than $5,400,000.  As a result of executing the Empowerment Center Payment Bond, PIIC has incurred Losses, exclusive of costs, fees and expenses, of no less than $792,714.34, to date. Accordingly, exclusive of costs, fees and expenses, PIIC currently estimates its exposure under the Empowerment Center BondS to be approximately $2,500,000.

48.     PIIC's vouchers or other prima facie evidence of the fact and extent of the liability of Defendants for PIIC's payments under the Empowerment Center Payment Bond is attached hereto as **Exhibit "J"**. Additionally, PIIC anticipates that it may sustain or incur additional Loss under the Empowerment Center Payment Bond.

49.     PIIC currently holds contract balances associated with the Empowerment Center Project in a PIIC managed escrow account in the amount of $340,777.68 which could be applied to offset and/or satisfy incurred Losses and/or exposure to Loss.

50.     Accordingly, PIIC currently estimates its total exposure to Liability & Loss, exclusive of costs, fees and expenses, as a result of executing the Empowerment Center Bonds on behalf of Principal to be approximately $2,160,000.

### F.  Expenses Liability & Loss

51.     PIIC has retained the services of counsel to evaluate the legal defenses available to PIIC and the Principal for the claims brought against the Bonds and to prosecute this action. To date, PIIC has incurred costs of $6,797.50 related to its retention of said legal services.

52.     PIIC also retained the services of a The Vertex Companies, Inc. to, amongst other things, assisting in soliciting completion bids and evaluating the scopes of work, progress, delays, and claims asserted under the Bonds by the Principal's lower-tier vendors (subcontractors, suppliers, sub-subcontractors, etc.) and the Obligees. To date, PIIC has incurred costs of $128,088.83 related to its retention of said consulting services.

53.     PIIC also retained the services of Alan Gray, LLC, an accounting consulting firm, to evaluate Principal's construction costs and accounting relative to the Projects and escrow funds administration efforts.  To date, PIIC has incurred costs of $29,766.00 related to its retention of said consulting services.

54.     Accordingly, to date PIIC has incurred losses of $164,652.33 related to its payment of legal and consulting fees, of which Defendants have reimbursed $24,525.19, leaving an outstanding and unreimbursed balance of $140,127.14.   PIIC's vouchers or other prima facie evidence of the fact and extent of the liability of Defendants for PIIC's payments for legal and consulting fees are attached hereto as **Exhibit "K"**.   Additionally, PIIC anticipates that it will sustain or incur additional Loss for legal and consulting fees as the pending claims and disputes progress.

### G.  PIIC Demands to Indemnitors

55.     On June 15, 2020, PIIC requested from the Principal and certain Defendants updated financial statements and access to books and records.   Principal nor the Defendants have provided complete access to books and records.   A copy of the demand for financial statements and access to books and records is attached as **Exhibit "L."**

56.     By letter dated July 15, 2020, PIIC demanded indemnity, discharge and collateral from all Defendants as a result of Losses incurred by PIIC and outstanding exposure to PIIC under the Bonds.   Therein demand was made on the Defendants, jointly and severally: (a) for payment of PIIC's direct losses incurred to that date; (b) evidence of the full and complete discharge of PIIC from all the Bonds; and/or (c) deposit with PIIC immediately available cash funds in the amount of $3,967,467.00 (which represented PIIC's best estimate of its exposure under the Bonds at that time).   A copy of the July 15, 2020, Demand for Indemnity, Discharge, and Collateral is attached as **Exhibit "M."**   On July 21, 2020, Principal alone responded to PIIC's July 15, 2020 letter, stating that "Principal is not in a position to discharge the Surety from the Bonds or provide the demanded collateral." A copy of the Principal's July 21, 2020, letter to PIIC is attached as **Exhibit "N."**   To

date, Defendants have neither paid PIIC's direct incurred Losses, obtained the full and complete discharge of PIIC from the Bonds, nor deposited any of the collateral requested by PIIC.

57.     By letter dated August 25, 2020, PIIC notified all Defendants that they were in breach of their obligations under the Indemnity Agreement, and further advised that PIIC's then current best estimate of its exposure to Liability and Loss as a consequence of its issuance of the Bonds on behalf of Principal was $4,445,774.21. A true and correct copy of PIIC's August 25, 2020 notice of default letter to the Defendants is attached as **Exhibit "O"**.

58.     As detailed herein, PIIC currently incurred and has been unreimbursed Losses to date totaling $2,734,701. Furthermore, PIIC currently estimates that its exposure to additional Loss and Liability under the Bonds is no less than $2,271,157.  To date, PIIC has been reimbursed the sum of $24,525.19 from bonded contract balances.  Additionally, there are currently $428,305.26 in bonded contract balances held in project specific escrow accounts held and managed by PIIC to ensure the funds are applied against bonded exposure and/or the Indemnitors obligations under the Indemnity Agreement.  A true and correct accounting of the balances held in the project specific escrow accounts is attached as **Exhibit "P"**. Accordingly, at this time, PIIC estimates its total exposure to Loss and Liability as a result of its issuance of the Bonds to be no less than $4,553,027.55.

59.     All conditions precedent to maintaining this action have occurred, been excused, or otherwise have been waived.

60.     The Indemnity Agreement is in effect as to all Defendants and has not been terminated by any Defendant.

<u>**COUNT I**</u>
<u>**CONTRACTUAL INDEMNIFIATION**</u>

61.     PIIC re-alleges paragraphs 1 through 60 as if fully set forth herein.

62.     This is an action for damages seeking relief at law under the Indemnity Agreement.

63.     There exists a valid and fully enforceable contract between PIIC and the Defendants, the terms of which are memorialized in the Indemnity Agreement.

64.     PIIC has fully performed all of its obligations under the Indemnity Agreement.

65.     Despite PIIC's demands, the Defendants have failed and/or refused to perform their obligations under the Indemnity Agreement, including but not limited to their, joint and several, obligations to indemnify and hold harmless PIIC from and against any Liability and Loss sustained or incurred by reason of having executed the Bonds on behalf of Principal or in enforcing the covenants or conditions of the Indemnity Agreement.

66.     As a proximate result of Defendants' breach of their obligations under the Indemnity Agreement, PIIC has and will continue to incur substantial financial damages in defending any claims asserted against the Bonds, and in prosecuting this action or otherwise incurring expenses as a result of having issued the Bonds to Principal.

67.     WHEREFORE, Plaintiff, PIIC, respectfully requests that this Honorable Court enter a Final Judgment in its favor and against the Defendants, awarding PIIC its general and consequential damages which have and/or will be incurred as a result of the Defendants' breach of the Indemnity Agreement, awarding PIIC its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the Indemnity Agreement, and awarding PIIC such other and further relief as this Court deems necessary, just and proper.

## COUNT II
## SPECIFIC PERFORMANCE AND APPLICATION FOR PRELIMINARY INJUNCTION

68.     PIIC re-alleges paragraphs 1 through 67, as if fully set forth herein.

69.     PIIC hereby applies for a preliminary injunction ordering Defendants to specifically perform their obligations under the Indemnity Agreement to deposit collateral in the amount of

$4,743,929.82, representing the amount of security PIIC deems sufficient to discharge its Losses and Liability it has and may incur by reason of PIIC's issuance of the Bonds to Principal. The purpose of a preliminary injunction is to preserve the *status quo* of the litigation's subject matter pending trial on the merits, which purpose would be achieved here by the granting of a preliminary injunction.

70.     There exists a valid and fully enforceable contract between PIIC and the Defendants, the terms of which are memorialized in the Indemnity Agreement.

71.     PIIC has fully performed all of its obligations under the Indemnity Agreement.

72.     Despite PIIC's demands, the Defendants have failed and/or refused to fully perform their obligations under the Indemnity Agreement, including but not limited to their obligation to post satisfactory collateral and to make their books and records available upon demand by PIIC.

73.     The Defendants failure to deposit the demanded collateral with PIIC in accordance with the Indemnity Agreement has and continues to cause irreparable harm for which PIIC has no adequate remedy at law. In Paragraph 4 of the Indemnity Agreement the Defendants acknowledged that their duty to deposit collateral under the Indemnity Agreement is specifically enforceable because PIIC lacks an adequate remedy at law and their failure to deposit collateral with PIIC as required by the Indemnity Agreement would cause irreparable harm to PIIC, as to justify injunctive relief compelling the deposit of collateral.

74.     Defendants have a contractual obligation to provide PIIC with full access to all books and records related to any bonded obligation, including the Projects, as well as any records pertaining to the Defendants' ability to satisfy their obligations under the Indemnity Agreement. PIIC has demanded that the Defendants make their books and records available to PIIC for review

and copying. Defendants have failed and/or refused to provide PIIC with access to their books and records, despite demand.

75.     PIIC is fearful and apprehensive that the Defendants are or will become financially unable to pay any amounts that may be found owing to any claimants against the Bonds, for which PIIC may be liable, or satisfy their obligations to PIIC under the Indemnity Agreement, or that the Defendants will sell, transfer, dispose of, lien, secure or otherwise divert or conceal assets to avoid their obligations to PIIC.

76.     In the absence of the relief sought herein, PIIC has and will continue to suffer irreparable damage and loss because it may be forced to advance further funds in connection with the pending and potential claims on the Bonds without being adequately secured by the Defendants for its obligations under the Bonds.

77.     Unless the relief in the nature herein requested or its equivalent is granted, PIIC's equitable rights will be forever lost, depriving PIIC of adequate security for its obligations under the Bonds.  Further, unless the equitable relief requested is granted, Defendants are likely to sell, transfer, dispose, lien, secure, or otherwise divert their assets from being used to discharge the Defendant's obligations to PIIC under the Indemnity Agreement.

78.     PIIC has a high probability of success on the merits, as the Principal's failure to satisfy the pending and potential claims against the Bonds, coupled with their termination from two of the three Projects, have clearly triggered the Defendant's obligations under the Indemnity Agreement.  PIIC has duly performed its duties, obligations and conditions under the Indemnity Agreement and the Indemnity Agreement provides for the relief sought in this count.

79.     The threatened injury to PIIC outweighs the potential damage to the Defendants if the relief requested herein is granted, and such relief would not be adverse to the public interest.

80.     PIIC is entitled to equitable relief for specific performance of the Defendants' obligations to post satisfactory collateral.

81.     WHEREFORE, Plaintiff, PIIC respectfully requests that this Honorable Court enter a Preliminary Injunction and/or Final Judgment in its favor and against the Defendants: (a) granting PIIC specific performance of the Indemnity Agreement by directing the Defendants to provide satisfactory collateral to PIIC to cover PIIC's actual and/or potential losses and expenses; (b) prohibit and restrain Defendants from selling, transferring, conveying and/or otherwise encumbering any of their assets until the full amount of collateral is posted; (c) requiring Defendants to make their books and records immediately available to PIIC for inspection; (d) awarding PIIC its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the Indemnity Agreement; and (e) awarding PIIC such other and further relief as this Court deems necessary, just and proper.

## COUNT III – EXONERATION AND QUIA TIMET

82.     PIIC re-alleges paragraphs 1 through 81, as if fully set forth herein.

83.     PIIC has requested reimbursement and collateral from the Defendants but the Defendants have failed to respond or otherwise rejected the demands.  The Defendants have also failed to arrange for the Principal's completion of the Project, have failed to provide collateral, have failed to provide PIIC their books, records and accounts, have failed to reimburse PIIC for its incurred expenses, and have failed to cooperate with PIIC in developing defenses to ANR's claims.

84.     PIIC is fearful and apprehensive that the Defendants are or will become financially unable to satisfy further bonded obligations for which PIIC may be liable, unable to satisfy their indemnity obligations, or that Defendants, based upon their refusal to exonerate PIIC in accordance

with its demands, will sell, transfer, dispose of, lien, secure or otherwise divert or conceal their assets. PIIC is also fearful and apprehensive that Defendants will be financially unable to pay the expenses incurred by PIIC, including attorneys' fees.

85.     By virtue of the terms and obligations assumed by the Indemnitors as provided in the Indemnity Agreement, the laws covering the relationship of principal and surety, and the equitable doctrine of *quia timet*, PIIC is entitled to equitable relief to provide for its exoneration and for the preservation of all assets currently in the possession of the Defendants in a manner consistent with the primary obligation of the Defendants under the Indemnity Agreement.

86.     In the absence of the equitable relief sought herein, PIIC will suffer irreparable damage and loss because it may be forced to advance further funds in connection with the pending and potential claims on the Bonds without being adequately secured by Defendants for its obligations under the Bonds.

87.     Unless the relief in the nature herein requested or its equivalent is granted, PIIC's equitable rights will be forever lost, depriving PIIC of adequate security for its obligations under the Bonds.  Further, unless the equitable relief requested is granted, Defendants are likely to sell, transfer, dispose, lien, secure, or otherwise divert their assets from being used to discharge the Defendant's obligations to PIIC under the Indemnity Agreement.

88.     PIIC has a high probability of success on the merits, as the Principal's failure to satisfy the pending and potential claims against the Bonds, coupled with their termination from two of the three Projects, have clearly triggered the Defendant's obligations under the Indemnity Agreement.  PIIC has duly performed its duties, obligations and conditions under the Indemnity Agreement and the Indemnity Agreement provides for the relief sought in this count.

89.     The threatened injury to PIIC outweighs the potential damage to the Defendants if the relief requested herein is granted, and such relief would not be adverse to the public interest.

90.     By virtue of the rights under the Indemnity Agreement and the common law and equitable doctrines of exoneration and *quia timet*, PIIC is entitled to have the Defendants post funds or other security with PIIC that is sufficient to cover the actual and/or anticipated losses associated with the Losses and Liability relating to PIIC's issuance of Bonds on behalf of Principal.

91.     WHEREFORE, Plaintiff, PIIC, respectfully requests that this Honorable Court enter a Final Judgment in its favor and against the Defendants, awarding PIIC its general and consequential damages which have been and/or will be incurred (including PIIC's attorneys' fees and costs under the Indemnity Agreement), and ordering Defendants to immediately post collateral with PIIC (or deposit with the Clerk of this Court, for the benefit and protection of PIIC) in an amount to be determined by this Court to cover PIIC's anticipated losses and expenses in connection with the Bonds. In the alternative, PIIC respectfully requests that this court order the Defendants to: (a) render a full and complete accounting of all assets owned by them or which they have an interest; (b) allow full and complete access to all financial books, records and accounts maintained by Defendants; (c) refrain from selling, transferring or disposing of their assets including, but not limited to, sums held in offshore accounts; (d) grant to PIIC an equitable lien upon all assets and property of Defendants, including but not limited to, personalty, and mixed owed by the Defendants, and property in which the Defendants have any interest, to remain in effect until the Defendants place funds with PIIC as required by the Indemnity Agreement securing PIIC against any loss it has sustained or will sustain by virtue of it having executed the Bonds on behalf of Principal; and (e) award PIIC such other and further relief as tis Court deems necessary, just and proper.

## <u>COUNT IV – COMMON LAW INDEMNITY</u>

92.     PIIC re-alleges paragraphs 1 through 91, as if fully set forth herein.

93.     There exists a special relationship between PIIC, as surety, and Principal, as principal, arising out of the parties' business dealings related to the Projects and the Bonds, such that it is appropriate for common law indemnification to exist.

94.     PIIC has fully and completely performed any and all obligations arising out of the parties' business dealings related to the Projects and the Bonds, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise.

95.     PIIC has and continues to incur Losses and Liability as a result of the special relationship between PIIC and Principal. Additional indebtedness arising out of the special relationship will continue to accrue, including but not limited to the expenditure of funds paid: (i) in defense of claims asserted against the Bonds; (ii) in satisfaction of any liability which may ultimately be determined in favor of those asserting claims against the Bonds and who may hereafter assert claims against PIIC under the Bonds.

96.     Any and all Losses and Liability incurred to date as a result of the special relationship between PIIC and Principal, as well as any liability which may be imposed upon PIIC as a result of claims asserted against the Bonds and/or any other claimant(s) who may hereafter assert claims under the Bonds, arise only out of the vicarious, constructive, derivative or technical liability imposed upon PIIC as a result of the fault and/or wrongdoing of Principal.

97.     At common law, Principal is responsible to PIIC for any and all losses and expenses incurred or to be incurred.

WHEREFORE, Plaintiff, PIIC, respectfully requests that this Honorable Court enter a Final Judgment in its favor and against Principal, awarding Principal its general and consequential

damages which have been and/or will be incurred as a result of PIIC's payment of Losses for which

Principal should be liable under the legal theory of common law indemnity, awarding PIIC its

reasonable attorneys' fees and costs incurred in prosecution of the instant action, and awarding

PIIC such other and further relief as this Court deems necessary, just and proper.

     Dated this 5th day of October, 2020.

                Respectfully submitted,

                By: _ /s/ Daniel E. Levin, Esq._
                DANIEL E. LEVIN / FBN: 84428
                COLE, SCOTT & KISSANE, P.A.
                222 Lakeview Avenue, Suite 120
                West Palm Beach, FL 33401
                P: (561) 681-5555
                F: (561) 683-8977
                Daniel.Levin@csklegal.com
                _Counsel for Plaintiff, Philadelphia Indemnity_
                _Insurance Co._